**CLARENDON, LTD., Plaintiff–Appellant,**

v.

**STATE BANK OF SAURASHTRA, Defendant–Appellee.**

No. 101, Docket 95–7145.

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 1995.

Decided Feb. 23, 1996.

Stanley McDermott III, New York City (Piper & Marbury, New York City, On the Brief), Attorneys for Plaintiff–Appellant.

Bud G. Holman, New York City (Talat M. Ansari and Cathleen K. Condren, Kelley Drye & Warren, New York City, Of Counsel), Attorneys for Defendant–Appellee.

Before: MAHONEY, LEVAL, and CABRANES, Circuit Judges.

LEVAL, Circuit Judge:

This appeal concerns an action brought by Clarendon, Ltd., as beneficiary of an unpaid letter of credit, against State Bank of Saurashtra ("SBS"), a governmental bank in India, and against Chase Manhattan Bank, N.A., as advising bank. SBS issued the letter of credit at the instance of its customer Saurashtra Steel Industries, Ltd. ("SSIL"), an Indian steel fabricator, to help finance SSIL's purchase of a shipment of steel from Clarendon. The court granted SBS's motion to dismiss under Fed.R.Civ.P. 19(b) & 12(b)(7) because it found SSIL, which was not subject to the court's jurisdiction, to be indispensable to the resolution of the action.

The district court found that the complaint alleged against SBS two different theories of liability, one asserting SBS's liability on the grounds that it failed to perform its obligation to pay Clarendon under the terms of the letter of credit ("the letter-of-credit theory"), the second based on SBS's wrongful failure to remit to Clarendon monies SBS had collected from SSIL for Clarendon's benefit ("the collection theory"). Believing that Clarendon could not prevail on the letter of credit theory because of its noncompliance with the terms of the letter of credit (consisting primarily of discrepancies in the documentation it presented), the district court treated the complaint solely as if it were based on the collection theory. The court found that SSIL was indispensable to the litigation of the collection theory, but could not be joined in the lawsuit because it was not amenable to process. Following the entry of judgment dismissing the complaint, plaintiff moved for reconsideration, tendering an affidavit on behalf of SSIL agreeing to

submit to the court's jurisdiction. Ruling that it could not properly consider facts that had not been before the court at the time that it rendered judgment, the court declined to alter its judgment. For the reasons explained below, we vacate the judgment and remand for further proceedings.

*Background*

Because our holding depends more on considerations of procedure than on the merits of the dispute, we set forth a somewhat attenuated version of the complex facts. Furthermore, as there has never been an adjudication of the facts, we rely largely on the facts alleged in Clarendon's complaint.

Clarendon is a Swiss corporation, with offices in Stamford, Connecticut, which deals in bulk commodities. In May 1989, Clarendon entered into a contract to sell a cargo of scrap steel to SSIL, for shipment to India. The contract provided for payment under a 180–day irrevocable documentary letter of credit. A.7. On June 12, 1989, SBS issued, at SSIL's request, a 180–day irrevocable letter of credit in Clarendon's favor for approximately $2.2 million dollars. Meanwhile, on June 8, 1989, Clarendon had caused the scrap steel to be loaded on board the M/V Olympic Mentor at Liverpool, England, for shipment to SSIL in Bhavnagar, India. When the cargo arrived in India five weeks later, Clarendon had not yet assembled and transmitted all the necessary title documents. Nonetheless, Clarendon authorized the carrier by letter of indemnity dated June 30, 1989, to discharge the cargo to SSIL at Bhavnagar.

In August 1989, Clarendon presented the documents to Chase, which was acting as SBS's advising bank. Clarendon pointed out to Chase that there were discrepancies between the documents presented and those required under the letter of credit. For example, while the letter of credit required bills of lading dated on or after June 9, 1989, the bills of lading presented by Clarendon were dated June 8, 1989. Clarendon believed those discrepancies were of no commercial importance; it expected SSIL to waive the discrepancies and authorize SBS to pay. Clarendon instructed Chase to send the documents to SBS "with clear instruc-

tions that [SBS is] not to release the documents until all discrepancies have been waived and documents have been accepted." Chase, however, deviated from these instructions. Chase sent the documents to SBS "on a collection basis," telling SBS that the "documents should not be released to [SSIL] until accepted by them." Chase's message added, "On acceptance, please authorize us ... to claim reimbursement at maturity as per L/C [letter of credit] terms." SBS responded to Chase that it would hold the documents strictly on a collection basis and that Chase was not authorized to claim reimbursement upon maturity of the letter of credit. Chase failed to advise Clarendon of SBS's apparent disclaimer of its obligation to pay the letter of credit at maturity.

SSIL meanwhile deposited moneys with SBS covering its obligations as account party of the letter of credit. The complaint alleges that SSIL's deposits with SBS ultimately exceeded the amount of the letter of credit, but that SBS, without advising SSIL, applied the deposits to other indebtedness of SSIL, rather than to the letter of credit. Also, in November 1989, without informing Clarendon, SBS released the letter of credit documents it had received from Chase to SSIL in exchange for SSIL's acceptance of Clarendon's drafts, but without obtaining SSIL's waiver of the discrepancies as against the requirements of the letter of credit.

In December 1989, after expiration of the 180–day duration of the letter of credit, SBS cabled Chase that the "documents ... held by us on collection basis [and] due for payment on 4th December 1989 remain unpaid." SBS then notified SSIL that it had used SSIL's deposits to set off SSIL's other debts owed to the bank. At Clarendon's request, Chase made repeated demands on SBS for payment. SBS denied that it had received money from SSIL intended as payment for Clarendon's steel shipment. SSIL meanwhile became insolvent and fell under the administration of an Indian bankruptcy tribunal under India's Sick Companies Act. *See* The Sick Industrial Companies (Special Provisions) Act, 1985 (India). Neither Chase nor Clarendon received payment for any part

of the purchase price of the shipment of steel from SBS or SSIL.

### Proceedings Below

Clarendon instituted this action in the district court against Chase and SBS. Against Chase, Clarendon pleaded negligence (based primarily on Chase's instructions to SBS and its failure to inform Clarendon of SBS's disclaimer of its obligations under the letter of credit) and breach of contract. Against SBS, as noted above, Clarendon pleaded both SBS's failure to make the payment due under the terms of the letter of credit and SBS's failure to remit funds it collected from SSIL for payment to Clarendon. SBS then moved pursuant to Fed.R.Civ.P. 12(b)(7) and 19 to dismiss the complaint for failure to join SSIL as an indispensable party.[1]

The district court analyzed the "indispensable party" motion in the following fashion. Recognizing that Clarendon had pleaded both a letter-of-credit theory and a collection theory, the court asserted that it first needed to determine "the essential nature of the action, which is critical to a resolution of the motions."

> Clarendon and SBS posit opposing characterizations of the nature of this suit that are critical to reconcile prior to evaluating the merits of the motions. Clarendon asserts that this suit involves purely a letter-of-credit transaction, and so the rules governing international letters of credit apply. SBS maintains, conversely, that this is a collection case, and therefore the rules of collection govern. This becomes important to the motions at hand because the letter-of-credit and collection laws differ as to both the parties considered necessary to an action and in the forum best suited to applying the law.

The court acknowledged that a letter of credit represents a contract directly between the issuing bank and the beneficiary, and that a suit to enforce the bank's duty to pay does not require that the account party be joined. The court went on to note, however, that the "beneficiary must strictly comply with the terms of the letter of credit in order for the bank to incur an obligation to pay." In part because of documentary discrepancies, the court found that "Clarendon departed from the terms of the L/C. Therefore, as a matter of law, SBS's absolute duty to pay Clarendon under the letter of credit does not arise and letter-of-credit rules cannot control." The court then determined "that the rules governing collection apply to this dispute." Analyzing those rules, the court determined that SSIL was indispensable to the resolution of the collection dispute, and that since SSIL could not be joined, the action should be dismissed. The court decided the motion on March 21, 1994, and entered judgment on March 24, 1994, dismissing the action for failure to join a necessary and indispensable party.

On March 30, 1994, Clarendon moved to vacate or amend the judgment. In support of its motion, it submitted the affidavit of Bipin Paymaster, the Managing Director of SSIL, signed in India on March 25, 1994, undertaking that SSIL "will agree to be bound by all judgments entered in this case, as if it were a party to this case.... [and] [i]f, notwithstanding SSIL's agreement and covenant as aforesaid, SBS continues to insist that SSIL become a party to this case, then SSIL will submit to this court's jurisdiction and appear and answer any claim that SBS should assert against it." The district court denied the motion, ruling that it could not properly consider SSIL's new post-judgment offer to submit to the jurisdiction of the court because motions to amend a judgment may not be based on "new facts, issues or arguments not previously presented to the court."

### Discussion

Clarendon contends that SSIL was not indispensable to the adjudication of its collection theory and that, in any event, the district court was obligated, after dismissing by reason of SSIL's unavailability, to vacate the dismissal when SSIL promptly agreed to submit to the court's jurisdiction. We need no ruling on that theory.

---

1. SBS's motion relied also on the doctrine of *forum non conveniens*. The district court made

not consider either question. For even assuming that SSIL was indispensable to the adjudication of the collection theory, the district court should not have dismissed the action in its entirety.

## I. The Letter-of-Credit Claims

■ The complaint, as noted above, asserted causes of action in tort and contract against Chase and asserted various causes of action against SBS based in part on the letter-of-credit theory and in part on the collection theory. The district court recognized that SSIL was not indispensable to the adjudication of Clarendon's causes of action against SBS premised on the letter-of-credit theory. And no contention had been raised that SSIL was indispensable to the litigation of Clarendon's causes of action against Chase. Thus, regardless whether SSIL was indispensable to an adjudication of Clarendon's causes of action based on the collection theory, Clarendon was entitled to an adjudication of its causes of action against SBS based on SBS's alleged obligations as issuer of the letter of credit, as well as its causes of action against Chase. See Channel Master Corp. v. JFD Elec. Corp., 260 F.Supp. 568, 571–73 (E.D.N.Y.1966) (dismissing one count of complaint for failure to join indispensable party). In particular, there was no reason for the district court to choose, as it did, between the letter-of-credit claim and the collection claim. Clarendon was entitled to plead alternative theories and to have both theories adjudicated. Thus, the conclusion that SSIL was indispensable to adjudication of the collection theory did not justify dismissal of the entire action.

■ The district court apparently believed that Clarendon's letter-of-credit theory was defective because of Clarendon's presentation of discrepant documents. Accordingly, the district court believed it could properly disregard the letter-of-credit theory. However, SBS had not moved to dismiss Clarendon's letter-of-credit claim either on summary judgment or for failure to state a claim upon which relief could be granted. Its motion for dismissal was based only on failure to join an indispensable party, and therefore did not call into question the legal sufficiency of Clarendon's complaint. Accordingly, Clarendon had no notice that it needed to defend the legal sufficiency of that claim.

Had a motion been made either for summary judgment or for dismissal for failure to state a claim, Clarendon would have offered argument to rebut SBS's defense of discrepant documentation. Both parties appear to agree that the letter of credit expressly adopted as governing rules the International Chamber of Commerce's Uniform Customs and Practice for Documentary Credits (1983 revision) ("UCP"). Article 16 of the UCP places certain obligations on an issuing bank which refuses to honor a draft under a letter of credit by reason of discrepant documents. The issuing bank must give prompt notice of its refusal, and either hold the documents at the disposal of the presenter or return them. If it fails to act in accordance with these obligations, "the issuing bank shall be precluded from claiming that the documents are not in accordance with the terms and conditions of the credit." UCP, Art. 16(e). Clarendon contends that SBS failed to comply with its duties under Article 16, and is thus precluded from relying on the discrepancy of the documents to justify its refusal to pay.

Because there was no motion by SBS for summary judgment or dismissal of the letter-of-credit claim, Clarendon never had the opportunity to place these contentions before the district court, and never had the opportunity to receive an adjudication of its letter-of-credit claim against SBS.

Regardless whether SSIL is indispensable to the adjudication of the cause of action based on the collection theory, Clarendon retains the right to receive adjudication of its letter-of-credit claim, as well as its claims against Chase.[2] While we express no view on the merits of these issues, the district court should not have dismissed the action.

---

**2.** Although Chase has not appealed the dismissal of the action, it informed the district court below that it supported Clarendon's motion to vacate the judgment insofar as it related to Chase because the district court "dismissed claims against Chase ... on grounds inapplicable to those claims...." Indeed, Chase pointed out that it had "not yet sought, and the Court has not granted, summary judgment" on the letter-of-credit claim against Chase.

Accordingly, the judgment must be vacated and the action remanded for further proceedings.

## II. *The Collection Claims*

With respect to the collection claims, Clarendon advances three lines of argument:

First, it contends the district court erred in concluding that SSIL was indispensable to their adjudication.

Second, assuming a proper finding of SSIL's indispensability, Clarendon contends the court erred in dismissing the action without first granting Clarendon a reasonable opportunity to procure SSIL's consent to appear. The thrust of Rule 19, Clarendon argues, is to require joinder of the indispensable party, wherever possible, rather than to justify dismissal.[3]

Third, Clarendon challenges the district court's refusal to consider SSIL's post-judgment offer to submit to the court's jurisdiction. The district court ruled that a motion seeking to alter a judgment could be based only on the court's erroneous handling of matters submitted to it, and not on facts or arguments that might have been submitted but were not. *See In re Integrated Resources Real Estate Ltd. Partnerships Secs. Litig.,* 850 F.Supp. 1105, 1151 (S.D.N.Y. 1993); *Travelers Ins. Co. v. Buffalo Reinsurance Co.,* 739 F.Supp. 209, 211 (S.D.N.Y. 1990); *Consolidated Gold Fields v. Anglo American Corp.,* 713 F.Supp. 1457, 1476–77 (S.D.N.Y.1989). Clarendon contends that, however just this principle may be in other circumstances, it has no application where the problem is the unavailability of a party that, upon learning it has been found indispensable, promptly agrees to submit to the court's jurisdiction.[4]

■ Because of the unusual procedural posture of the action, however, we need not resolve any of these issues. They have all been rendered moot. Whether SSIL was properly considered indispensable is moot in view of the fact that it has consented to be joined in the action. And whether the district court should have given Clarendon time to procure SSIL as a party, or should, even after entry of judgment, have reopened the case to permit the joinder of SSIL, is moot in view of our decision to vacate the judgment by reason of the district court's failure to adjudicate the letter-of-credit claims. SSIL's offer to submit to the court's jurisdiction is no longer post-judgment. Under the circumstances, there is no further reason to regard SSIL as unavailable or to dismiss the action on that basis. If SBS wishes to assert third-party claims against SSIL, it may do so.

## III. *Jurisdiction*

Finally, SBS contends that SSIL cannot be made a party to this case because doing so would destroy the district court's jurisdiction over the matter. Specifically, SBS maintains that the court's diversity jurisdiction does not extend to a suit between two foreign residents, and that the addition of SSIL as a defendant where Clarendon is a foreign plaintiff would deprive the court of jurisdiction. SBS's contention is misconceived.

---

3. The Rule states that a person whose presence is necessary to a proper adjudication "shall be joined as a party" and "[i]f the person has not been so joined, the court shall order that the person be made a party." Fed.R.Civ.P. 19(a). *See Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968) (dismissal proper only where joinder "is not possible"); *see also Jaser v. New York Property Ins. Underwriting Ass'n,* 815 F.2d 240, 242 (2d Cir.1987) ("very few cases should be terminated due to the absence of non-diverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible"); *First Financial Marketing Servs. Group, Inc. v. Field Promotions, Inc.,* 286 F.Supp. 295, 299 (S.D.N.Y. 1968) (upon determining probable indispensabil-

ity of absent party, court gave plaintiff 60 days prior to dismissal to procure absentee's appearance).

4. Noting that the district court ruled on SSIL's indispensability on March 21, 1994, that Paymaster signed his affidavit consenting to jurisdiction on March 25, 1994, and that Clarendon moved for reconsideration on March 30, 1995, Clarendon argues that there was no unreasonable delay or imposition on the court. Furthermore, it points out that it did not have the power to cure SSIL's prior unavailability; it was only SSIL, and not Clarendon, that could submit SSIL to the court's jurisdiction, and this, not surprisingly, did not happen until after the court found SSIL to be indispensable.

■ To begin with, the district court had jurisdiction over Clarendon's claims not only because of diversity between the parties, but because Clarendon sued SBS under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611. *See* 28 U.S.C. § 1330; Plaintiff's Complaint, p. 2, ¶ 5. Thus, even if the parties were not diverse, the district court nonetheless would have had an independent, substantive basis upon which to hear the case. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 491–93, 103 S.Ct. 1962, 1970–71, 76 L.Ed.2d 81 (1983) (foreign plaintiff may sue foreign sovereign in federal district court under FSIA, notwithstanding lack of diversity between parties).

■ Furthermore, if SSIL enters the action, it will do so not to respond to the claims of Clarendon, which has maintained no claims against it, but to answer third-party claims that might be asserted against it by SBS. The assertion by SBS of a third-party complaint against a foreign national would not destroy the court's jurisdiction.[5]

### Conclusion

The judgment of the district court is vacated and the case is remanded for further proceedings. When the action is returned to the district court, SBS will have the opportunity, based on SSIL's consent to jurisdiction, to assert third-party claims against SSIL.

---

**5.** Nor would SBS prevail on its contention if Clarendon were asserting claims directly against SSIL. Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." SBS does not deny that claims made against SSIL would be so related to the claims already in the action that they would form a part of the same case or controversy.

Section 1367(b) provides that the rule of § 1367(a) does not apply to claims by plaintiffs against persons made parties under Rule 19 "[i]n any civil action of which the district courts have original jurisdiction founded solely on [diversity under] section 1332 of this title." Because jurisdiction over Clarendon's cause of action against SBS was founded also on the FSIA, this is not an action in which jurisdiction is founded solely on diversity. Accordingly, the bar of § 1367(b) to the exercise of supplemental jurisdiction would not apply if Clarendon were asserting claims directly against SSIL.