Breitel, J.
A former tenant of industrial premises sued its landlords for damages in fraud and for breach of warranty. The landlords counterclaimed for subsequent rents and for use and occupation, and also brought a summary proceeding to recover possession which was consolidated with this action. After a trial without a jury the tenant recovered a judgment for $70,086.81 and defendant landlords appeal, the Appellate Division having affirmed, two Justices dissenting.
There is no dispute that the lease contained a false representation that the demised premises were situated in an unrestricted zone. The primary contention made by landlords is that in the same lease the tenant covenanted that the operation of its business would produce no objectionable odors or gases and that, therefore, the false representation by landlord and broken covenant by the tenant nullified one another, disentitling the tenant to remedies for fraud. There are also auxiliary issues with respect to the fixation of damages. As will be seen, landlords distort the issue in the case. The tenant’s inability to continue its business as it contemplated is not determined solely by the presence or avoidability of offensive odors from the operation of its enterprise. In short, tenant did not receive the unrestricted premises for which it bargained and as landlords represented was the situation. Consequently, judgment was properly rendered in favor of tenant for fraud in the inducement.
Tenant, intending to engage in the conversion of restaurant garbage into fertilizer, entered into a five-year lease with landlords. The lease contained a representation that the demised premises were in an unrestricted zone and that the proposed use would not be in violation of the zoning ordinance. Concomitantly, the lease contained a covenant by tenant that the *625 operation of its business would produce no objectionable odors or gases.
After alteration of the premises, installation of equipment, but before the initial operation of the enterprise, violations were filed by the City of -New York. In due course, the enterprise was terminated, tenant moved out, and this action for fraud was instituted. The judgment recovered included all rent previously paid by tenant, the cost of installation of equipment, and the cost of removal.
The lease was executed March 4, 1964 for a five-year term commencing March 9, 1964. Prior to December 15, 1961, the premises, located in Brooklyn in New York City, were in an unrestricted zone. On that date, however, a new zoning resolution took effect and the premises were placed in an M-l district allowing light manufacturing uses. Under the new resolution, however, garbage conversion would be permitted in an M-l district provided odors did not become readily detectable at the lot line, and provided various other performance standards not confined to odors were satisfied. In contrast, in an M-3- district, which would also permit a garbage conversion use, odors were objectionable only if they created a public nuisance or hazard, and the other nonodor performance standards were considerably lower.
Concededly, the premises were never adapted to control odors in order to comply with an M-l standard, or to satisfy nonodor performance standards required in an M-l district. The violations filed, despite contrary interpretations given by the parties, covered both the failure to engage in a permitted use and to obtain a certificate of occupancy permitting the actual use and reflecting M-l standards required for the actual use. Undisputed in the case is that a significant added expense would be required to adapt the premises to an M-l conditionally permitted use, an expense which would not be entailed if the premises were in a wholly unrestricted area or, for that matter, if the premises were in an M-3 (heavy manufacturing) district.
The cross covenants of the landlords and the tenant in the lease are not contradictory but are reconcilable. All parts of an agreement are to be reconciled, if possible, in order to avoid inconsistency (Corhill Corp. v. S. D. Plants, Inc., 9 N Y 2d 595, 599; see, also, 4 Williston, Contracts [3d ed.], § 619, p. 731). But *626 the cross covenants present no problem, and, as a practical matter, their reconciliation in this lease involves no straining of language. Even in an unrestricted zone there is an obligation on the part of landowners and users not to permit objectionable odors. Anterior to zoning requirements there is the common law of nuisance (see, generally, Prosser, Torts [3d ed.],p. 611 et seq., esp. 612, 620-621). Hence, the tenant’s covenant is a rational inclusion even in a lease covering premises in an unrestricted zone.
Such reconciliation, however, does not dispose of the main problem. Landlords argue that tenant, represented by a lawyer, Avas just as much on notice, as they, the landlords, were, that the premises were located in a restricted zone. Ergo, they invoke the familiar rule that one may not charge another Avith fraud if one knew, or should have known, the actual situation.
True, both sides were represented by laAvyers. But tenant’s testimony is that when it sought an adjournment of the negotiations in order for its laAvyer to check whether the premises were located in an unrestricted zone, landlords’ laAvyer, who AAras also one of the principals, said that it would not be necessary, that they (landlords) “ own the property, and we know the area ”, that it is in an unrestricted zone, and “ We [landlords] guarantee it.” (Landlords’ testimony denied ever making such statements.) The discussion was resolved only by including the representation in the lease. Tenant contended and proved that it had not actually known of the zoning requirement and had relied on what it was told. This proof, if accepted (as it was in the affirmed finding of the trial court), made out a classic instance of fraud in the inducement, for landlords intentionally or recklessly made false representations either as to their knowledge of the facts or the facts themselves (for the significance of recklessness as equivalent to scienter, see 24 N. Y. Jur., Fraud and Deceit, §§ 150-151, and cases cited).
To recapitulate: Tenant was induced to make a lease for use of the premises for garbage conversion on the representation that the premises were in an unrestricted district. That representation, or its practical effect, are not negated by the tenant’s covenant not to cause objectionable odors, a requirement obtaining to avoid nuisance even in an unzoned or unrestricted area. The representation has fraudulent consequence even *627 if tenant, by additional uncontemplated expense, could have adapted the premises to the use for which the premises had been leased. The added expense was not a burden tenant would have incurred in an unrestricted district or even in a restricted M-3 district.* Nor does it avail landlords that even in an M-3 district tenant would have to control odors, anymore than it would avail landlords that tenant would have to avoid nuisance in an unrestricted district. The point is that there is a different level of expense or added expense in each of the instances. True, tenant would have been happy to have complied with M-3 restrictions because, for its purposes, they were almost identical, if not indeed identical, with the requirements in an unrestricted area; but the harm of the fraud and its materiality are incurred by the higher and more expensive requirements of an M-l district. Moreover, the harm to tenant was not limited to the problem of odor control but extended to the other zoning requirements for M-l districts. These other requirements were not developed in the record, although urged in the briefing. Hence, landlords’ position is untenable.
Landlords also contend that only a misrepresentation of law rather than of fact is involved and, therefore, that fraud will not lie. There is no longer any doubt that the law has recognized, even in this State, a sharp distinction between a pure opinion of law which may not, except in unusual circumstances, base an action in tort, and a mixed statement of fact as to what the law is or whether it is applicable (cf. Municipal Metallic Bed Mfg. Corp. v. Dobbs, 253 N. Y. 313, 316-318; 24 N. Y. Jur., Fraud and Deceit, §§ 60—62; cf. Restatement, Torts, § 545; Prosser, Torts [3d ed.], pp. 740-742). In the Municipal Metallic Bed case (supra) it was held explicitly that a landlord’s misrepresentation as to legality of use of demised premises would not, as to the tenant, be treated as an opinion of law, and that the tenant might rely on the contract representations of the landlord.
Most important it is that the law has outgrown the oversimple dichotomy between law and fact in the resolution of *628 issues in deceit. It has been said that- 44 a statement as to the law, like a statement as to anything else, may be intended and understood either as one of fact or one of opinion only, according to the circumstances of the. case ” (Prosser, op. cit., p. 741). The statements in this case, both before the execution of the lease, and in the body of the lease, exemplify ideally an instance in which the statements are not intended or understood merely as an expression of opinion. Landlords said they knew the premises were in an unrestricted district. This meant that they knew as a fact, that the zoning resolution did not restrict the use of the particular premises, and tenant so understood it. When coupled with the further fact that tenant’s lawyer was persuaded not to verify the status of the premises on the landlords’ representation, it is equally clear that tenant understood the statement to be one of fact, namely, what the zoning resolution provided by description, map, and requirements as to the area in question. The misrepresented fact, if it is at all necessary to find misrepresented facts, was what the zoning resolution contained by way of description, map, and requirements, hardly opinions as to the law albeit matters to be found in a law.
Moreover, the modern rule extends even further to cover a false opinion of law if misrepresented as a sincere opinion, as in the case of any other opinion, where there is reasonable reliance (Restatement, Torts, § 545; Restatement, 2d, Torts [T. D. No. 11, April 15, 1965], § 545, Comment c.; Prosser, op. cit., pp. 742-744; cf. Ann., Release-Misrepresentation as to Law, 21 ALR 2d 272-280). No doubt the New York rule has been more restrictive (see, e.g., Duffany v. Ferguson, 66 N. Y. 482, 484-485, 487; Van Slochem v. Villard, 207 N. Y. 587, 590; 24 N. Y. Jur., Fraud and Deceit, § 60). But the rule is outdated and fails to recognize what this court noted in the Municipal Metallic Bed case (supra), namely,44 No presumption exists that all men know the law. The maxim 4 a man is presumed to know the law,’ is a trite, sententious saying, 4 by no means universally true. ’ Ignorance of the law does not excuse persons so as to exempt them from the consequences of their acts, such as punishment for criminal offenses * * * If ignorance of the law did not in fact exist, we would not have lawyers to advise and courts to decide what the law is ” (253 N. Y., p. 317). *629 True, this was not said in a fraud context but the realities involved are the same whether the applicable category is contract or fraud.. Hence, in the proper circumstances there may indeed be reliance on a fraudulently expressed statement of the law. Arguably, the facts of this case do not require so great a reach, for here the statements were keyed to the underlying data (facts) upon which the applicability of the particular zoning provisions governing the rights of owners and users were to be determined (the law). But, for the reasons indicated, it is not necessary to make the distinction rest on so narrow an analysis.
Consequently, the affirmed findings of fact establish landlords’ liability for fraud in the inducement. It is only necessary to pass to the factors affecting damage, the tenant having chosen to rescind the fraudulently induced agreement.
Landlords contend that in any event tenant is not entitled to recover rent paid while it remained in occupation and operated its enterprise. To establish this proposition they cite cases involving constructive eviction where rent does not abate until removal from the premises. Tenant, on the other hand, cites cases involving illegality where a landlord’s right to rent may not be enforced but the parties are left as they are. Neither line of cases applies. The correct rule is that in the case of fraud, upon rescission, the tenant ceases to be obliged to pay rent in the future. Depending upon the nature and effect of the fraud, he may be entitled to recover past rents paid or be liable for the agreed rent or use and occupation prior to rescission. (Daly v. Wise, 132 N. Y. 306, 311; 2 N. Y. Law of Landlord and Tenant, § 718, at p. 520; 33 N. Y. Jur., Landlord and Tenant, § 29, at pp. 316, 317-318; 24 N. Y. Jur., Fraud and Deceit, § 215; CPLR 3002, subd. [e].)
The lease took effect March 9, 1964. In April,. 1965, the violations were filed and the violation summons served. But it was not until July, 1965 that tenant had completed both installation and experimental runs. Three weeks later the plant closed down. Accepting these as affirmed findings of fact, only a very brief period of full use, namely three weeks, is involved, to which the doctrine of de minimis non curat lex may be appropriately applied. Moreover, landlords at no time presented the courts below, or this court for that matter, with the *630 correct theory. The payment of rent prior to rescission and during the period of planning, installation, and testing was simply a consequence of the fraudulent acts, and, therefore, recoverable. Hence, the award requiring the reimbursement of rents previously paid by the tenants in the amount of $10,489.25 should be left undisturbed.
Landlords also attack the damages award for removal ($11,000). and for installation ($47,947.33) on the ground that in the one case an unqualified expert testified and that, in the other, speculative estimates were included, as well as the cost of some of the equipment. As to the cost of equipment, tenant explains that these related only to items that were not removable from the premises. No doubt the estimates or evaluations of expenses were less than precisely established but, given the tort, reasonable evidence of damage suffices (13 N. Y. Jur., Damages, §§ 17-19; Ann., Uncertainty as to Damages, 78 A. L. R. 858). Since, once again, there are affirmed findings of fact, and it is peculiarly within the discretion of the trial court to assess the qualifications of experts and the persuasiveness of testimony as to estimates and evaluations, these items of damage should not be disturbed. It should be noted that the trial court refused to assess loss of profits on the ground that the proof was too speculative.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Furo and Judges Burke, Soileppi, Bergan, Keating and Jasen concur.
Order affirmed.

 Analytically, tenant was no more obligated to accept premises subject to M-3 restrictions than M-l restrictions, but since the parties have treated the issue as one largely between the two types of districts, and tenant would, have been satisfied to comply with M-3 restrictions, M-3 districts are also discussed.