**VTECH HOLDINGS LIMITED and VTech Electronics Netherlands, B.V., Plaintiffs,**

v.

**LUCENT TECHNOLOGIES INC. and Lucent Technologies Consumer Products, L.P., Defendants.**

No. 01 Civ. 0612(JGK).

United States District Court, S.D. New York.

Oct. 27, 2001.

Ridley M. Whitaker, New York City, for plaintiffs.

Sandra Goldstein, Cravath, Swaine & Moore, New York City, for defendants.

*OPINION AND ORDER*

JOHN G. KOELTL, District Judge.

This action arises out of the purchase by the plaintiffs, VTech Holdings Ltd. and VTech Electronics Netherlands, B.V. (collectively "VTech") of the consumer telephone business of defendant Lucent Technologies ("Lucent").[1] The plaintiffs allege claims of fraud (Count I), breach of warranties (Count II), breach of covenant causing certain representations and war-

1. The parties dispute the status of the other defendant, Lucent Technologies Consumer Products L.P. ("LTCP"). Lucent maintains that LTCP no longer exists as a legal entity. VTech insists that LTCP can be sued and that, because LTCP has failed to answer or otherwise move with respect to the complaint, VTech will seek to obtain a default. However, the status of LTCP is not before the Court at this time and does not affect the disposition of this motion.

ranties to be untrue and incorrect (Count III), breach of covenants (Count IV), and rescission (Count V). The plaintiffs also seek attorney's fees (Count VI). Pursuant to Fed.R.Civ.P. 12(b)(6), Lucent has moved to dismiss Counts I, II (insofar as the claim for relief exceeds $45 million), and III of the complaint for failure to state a claim upon which relief can be granted.

I.

On a motion to dismiss, the allegations in the complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendants' present motion should only be granted if it appears that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon*, 147 F.3d at 188; *see also Goldman*, 754 F.2d at 1065.

In deciding the motion, the court may consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. *See Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir.1991); *Skeete v. IVF America, Inc.*, 972 F.Supp. 206, 208 (S.D.N.Y.1997).[2]

II.

The following facts are accepted as true for the purposes of the motion to dismiss. In the fall of 1998, VTech entered into negotiations to acquire the defendants' consumer telephone business (the "Business"). (Compl.¶ 10.) In February 1999, VTech submitted to the defendants a proposal for the purchase of the Business. (Compl.¶ 12.) VTech and the defendants continued negotiations until June 1999, when the defendants announced their intention to sell the Business to a group of insiders who had formed a management buyout group. (Compl.¶¶ 12, 14.) However, in September 1999, AT & T separately informed VTech and the management buyout group that it had decided to award its Consumer Wireless Telephone Brand License, under which Lucent had formerly marketed its consumer telephone products, to VTech. (Compl.¶¶ 11, 15.) At that point, the defendants abandoned their efforts to sell the Business to the management buyout group and reentered negotiations with VTech. (Compl.¶ 16.)

On January 19, 2000, VTech signed an agreement with the defendants (the "Agreement") whereby VTech was to acquire the Business on March 31, 2000 in exchange for $121,266,000 on the condition that, among other things, Lucent's warranties in the Agreement were still true in all material respects at the time of closing and there had been no material adverse changes in the condition of the Business by that time. (Compl. ¶ 17; *see also* Agreement §§ 8.2(a) & (c).) VTech now con-

2. The parties agree that in this diversity action, the Court should apply New York law, and the Court can accept that agreement. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 239 n. 4 (2d Cir.1999); *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 203 n. 7 (2d Cir.1998).

tends that the defendants made certain false affirmative representations, warranties, and covenants in the Agreement regarding the actual value and condition of the Business in order to induce VTech to enter into the Agreement. (Compl.¶ 20.) VTech also contends that the Officers' Certifications provided to VTech by the defendants at the closing omitted statements of material fact that were needed to make the statements in the Agreement not misleading, despite representations in the Officer's Certifications that there were no such omissions. (Compl.¶ 42.) VTech claims that these misrepresentations and omissions were willful and material and that it reasonably and justifiably relied on them to its detriment. (Compl.¶ 43, 45.) On March 31, 2000 VTech paid the defendants $121,266,000 to purchase the Business from the defendants. (Compl.¶ 46.) VTech alleges that, as a result of the defendants' willful misrepresentations of present fact, VTech has suffered out-of-pocket losses in excess of $170,000,000 which are continuing. (Compl.¶ 48.)

Furthermore, VTech alleges that these misrepresentations and material omissions of facts caused the warranties in Sections 3.9(c) and 3.25 of the Agreement to be untrue and incorrect, leading to substantial and continuing damages in excess of $300,000,000. (Compl.¶¶ 50–52.) VTech also alleges that the defendants breached a covenant in the Agreement whereby the defendants covenanted not to take any action, or omit to take any action, or cause their affiliates to take any action or not to take any action, which would cause the defendants' representations and warranties in the Agreement to be untrue and incorrect, resulting in damages in excess of $300,000,000. (Compl.¶¶ 54–55.)

In Section 9.3 of the Agreement, the parties agreed to indemnify each other as follows:

**9.3 General Agreement to Indemnify**

(a) From and after the Closing Date, each Seller or Buyer, as applicable, shall indemnify, defend and hold harmless, on an after-tax basis, the other party hereto and each of its respective Affiliates, officers, directors, agents and employees (each a "*Buyer Indemnified Party,*" "*Seller Indemnified Party*" or "*Indemnified Party,*" as the context requires) from and against any and all claims, actions, suits, proceedings, liabilities, obligations, losses, and damages, amounts paid in settlement, interest, costs and expenses (including reasonable attorney's fees, court costs and other out-of-pocket expenses incurred in investigating, preparing or defending the foregoing) (collectively, "*Losses*") incurred or suffered, directly or indirectly, by any Indemnified Party (through the application of the assets of the Business, or the Assumed Liabilities or otherwise) to the extent that the Losses arise by reason of, or result from or relate to (i) the failure of any representation or warranty (other than representations and warranties set forth in Sections 3.14, the failure of which is covered by paragraph (d), below) of such party contained in this Agreement to have been true in all respects when made and as of the Closing Date (without regard to any materiality, material adverse effect or other similar qualifier contained therein) or (ii) the breach by such party of any covenant or agreement of such party contained in this Agreement to the extent not waived by the other party.

* * * * * *

(f) Sellers' aggregate liability for all claims made under Section 9.3(a)(i) shall be subject to the following limitations: (i) Sellers shall have no liabil-

ity for such claims until the aggregate amount of the Losses incurred shall exceed $1,000,000 (the "*Indemnity Basket*"), in which case Sellers shall be liable only for the portion of the Losses exceeding the Indemnity Basket, and (ii) Sellers' aggregate liability for all such claims shall not exceed $45,000,000 (the "*Indemnity Cap*") [with certain exceptions not relevant here]. Buyer may not make a claim for indemnification under Section 9.3(a)(i) for breach by either Seller of a particular representation or warranty after the expiration of the survival period specified in Section 9.2 to such representation or warranty.

* * * * * *

(h) The indemnification provided in this Article 9 shall be the sole and exclusive remedy after the Closing Date with respect to claims for monetary relief based on or arising out of this Agreement (other than any claim for intentional tort or willful misrepresentation).

(Compl. Ex. 1, at 50–53.)

III.

A.

Lucent moves to dismiss the plaintiff's claim of fraud on the ground that it is duplicative of the plaintiff's breach of contract claim. A claim for fraud under New York common law consists of the following elements: (1) a material representation or omission of material fact; (2) that is false or misleading; (3) made with knowledge or reckless disregard of its falsity; (4) reliance; and (5) injury. *See Small v. Lorillard Tobacco Co., Inc.,* 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892, 898 (1999); *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 769 (1995); *Vermeer Owners, Inc. v. Guterman,* 78 N.Y.2d 1114, 578 N.Y.S.2d 128, 585 N.E.2d 377, 378 (1991). The mere allegation that "a defendant did not intend to perform a contract with a plaintiff when he made it" generally fails to state a claim for fraud, however, and will be dismissed as duplicative under New York law. *See Gordon v. Dino De Laurentiis Corp.,* 141 A.D.2d 435, 529 N.Y.S.2d 777, 779 (N.Y.A.D.1988); *PI, Inc. v. Quality Prods., Inc.,* 907 F.Supp. 752, 761–62 (S.D.N.Y.1995) (collecting New York cases). The rationale for this rule is that a party need not be expressing an unconditional intention to perform by contracting, and may instead be expressing an intention either to perform or suffer the ordinary contractual consequences for a breach. *See generally Briefstein v. P.J. Rotondo Constr. Co.,* 8 A.D.2d 349, 187 N.Y.S.2d 866, 868 (N.Y.A.D.1959). If a party breaches a contract, the party will be required to pay contract damages whether or not the party intended to perform the contract at the outset. *See id.* An intention not to perform does not bring on greater damages than actual nonperformance. *See id.*

There is some tension in the case law as to whether the rule barring duplicative fraud claims applies only to claims based on alleged misrepresentations of future intention or also bars claims based on alleged misrepresentations of present fact. In *Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969), the New York Court of Appeals, without discussing any rule against allegedly duplicative fraud claims, restored a jury verdict for fraud where the plaintiff alleged that he was fraudulently induced into signing a land sales contract by a number of misrepresentations concerning the present condition of the property, even though the alleged misrepresentations were set forth in the contract as warranties. The Court of Appeals also sustained the claim for breach of contract and noted that the damages were the same. *See id.* at 217–18;

*see also National Conversion Corp. v. Cedar Building Corp.,* 23 N.Y.2d 621, 298 N.Y.S.2d 499, 246 N.E.2d 351 (1969). The Appellate Division has also explained: "[a] warranty is not a promise of performance, but a statement of present fact. Accordingly, a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim...." *First Bank of Americas v. Motor Car Funding, Inc.,* 257 A.D.2d 287, 690 N.Y.S.2d 17, 21 (N.Y.A.D.1999). There are nevertheless other lower court cases in which the rule against duplicative fraud claims has been extended to statements of present fact. *See, e.g., Four Finger Art Factory, Inc. v. Dinicola,* No. 99 Civ. 1259, 2000 WL 145466, at *4–6 (S.D.N.Y. Feb.9, 2000); *J.E. Morgan Knitting Mills, Inc. v. Reeves Brothers, Inc.,* 243 A.D.2d 422, 663 N.Y.S.2d 211, 211 (N.Y.A.D.1997); *Suzy Phillips Originals, Inc. v. Coville,* 939 F.Supp. 1012, 1016 (E.D.N.Y.1996).

With regard to statements of future intention, the rule against duplicative fraud claims is also not without exception. While the dominant trend is that a fraud claim cannot be based solely on the allegation that a party has made a contractual promise with no intention of performing it, some cases have stated that "[a] false statement of intention is sufficient to support an action for fraud, even where that statement relates to an agreement between the parties." *Graubard Mollen Dannett & Horowitz v. Moskovitz,* 86 N.Y.2d 112, 629 N.Y.S.2d 1009, 653 N.E.2d 1179, 1184 (1995); *see also Rudman v. Cowles Communications, Inc.,* 30 N.Y.2d 1, 330 N.Y.S.2d 33, 280 N.E.2d 867, 871 (1972); *Sabo v. Delman,* 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906, 908 (1957). In order to resolve any apparent tension between these two lines of cases concerning statements of future intent, the Court of Appeals for the Second Circuit has explained that to maintain a claim for fraud in these circumstances, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 20 (2d Cir.1996) (internal citations omitted).

█ VTech has sufficiently pleaded a cause of action for fraud in this case. VTech alleges that it entered into the Agreement on January 19, 2000 only because Lucent misrepresented and concealed a number of contemporaneous facts about the value and condition of the Business and about changes in these facts that had taken place since September 30, 1999. (Compl.¶¶ 21–35.) VTech also argues that Lucent made a number of materially false or misleading representations of present fact in its Officers' Certifications, which were submitted at the closing on March 31, 2000. (Compl.¶¶ 36–42.) These representations induced VTech into believing that the conditions precedent to the closing were satisfied, according to VTech, and VTech alleges that it closed on the Agreement and paid Lucent $121,266,000 in reliance on these representations. VTech's fraud claim is thus based in large part on allegations that it was induced to enter into a contract and then complete the closing by a series of misrepresentations of present fact, rather than a series of false promises. These allegations are thus more analogous to those that stated a claim for fraud in *Jo Ann Homes at Bellmore,* 302 N.Y.S.2d 799, 250 N.E.2d at 217–18, and *First Bank of Americas,* 690 N.Y.S.2d at 21, than to those that failed to state a claim in *Bridgestone/Firestone,* 98 F.3d at 20. Moreover, part of the rationale for striking duplicative fraud claims is that there is ordinarily no difference be-

tween contract damages for nonperformance and fraud damages. *See Briefstein,* 187 N.Y.S.2d at 868. In this case, as discussed more fully below, the fraud damages would not necessarily be duplicative of the contract damages because Lucent argues that the contractual damages are capped.

Lucent argues that the rule against duplicative fraud claims nevertheless applies, and that the fraud claim in this case should be dismissed under the *Bridgestone/Firestone* test. The *Bridgestone/Firestone* test may not apply to this case, because it was developed in the context of misrepresentations of future intent rather than present fact. In any event, the *Bridgestone/Firestone* test allows for exceptions to the rule against duplicative fraud claims where the plaintiff seeks special damages that are caused by the misrepresentation and that are unrecoverable as contract damages. In this case, the Agreement caps damages for breach of contract claims at $45 million, with an exception for "intentional tort and willful misrepresentation," *see* Agreement §§ 9.3(f) and (h), and Lucent vigorously argues that the term "willful misrepresentation" applies only to acts that are "tortious in nature." If Lucent is correct about this interpretation, then there are damages available in a fraud action that would be unavailable in an action for breach of contract. A party may use misrepresentations of present fact to induce another party into entering into a contract that not only caps contractual damages but also extinguishes an uncapped parallel action for fraudulent inducement. This is thus a case in which the possibility of obtaining additional damages in a fraud claim would require preservation of the fraud claim under the third *Bridgestone/Firestone* exception.

### B.

Lucent also seeks dismissal of Count II of the complaint (for breach of warranties) insofar as the claim for damages exceeds $45 million. Lucent contends that the express terms of the contract limit recovery in these circumstances to $45 million. VTech argues that its claims are based on the exception to the $45 million cap for claims involving a "willful misrepresentation." Lucent responds that the exception applies *only to tort claims and not to* breach of warranty claims such as those in Count II.

This issue is premature at this point. It is not clear that the damages in this case will exceed $45 million. If the actual damages arising out of the alleged breach of warranty are less than $45 million, as Lucent itself maintains, this issue need not be decided.

In any event, the amount of damages for breach of warranties cannot be limited as a matter of law at this time. The interpretation of the contractual cap depends upon the intent of the parties in entering into the Agreement. The provision is not so unambiguous that it can be construed as a matter of law. *See, e.g., TSR Consulting Servs., Inc. v. Steinhouse,* 267 A.D.2d 25, 699 N.Y.S.2d 375, 377 (N.Y.A.D.1999) (noting that summary judgment is inappropriate on questions of contract interpretation where there is an ambiguity in the contract, which requires extrinsic evidence for its resolution); *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir.1998) (same). Rather, the "essence of contract interpretation ... is to enforce a contract in accordance with the true expectations of the parties in light of the circumstances existing at the time of the formation of the contract." *Reiss v. Financial Performance Corp.,* 279 A.D.2d 13, 715 N.Y.S.2d 29, 34 (N.Y.A.D.2000) (collecting cases). The intent of the parties in this case is not so clear that it can be said as a matter of

law that "willful misrepresentation" refers only to tort claims and not to willful breaches of the representations and warranties in the Agreement, or that the $45 million cap applies to such willful breaches.

Lucent relies on *Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 618 N.Y.S.2d 882, 643 N.E.2d 504, 508 (1994), in which the New York Court of Appeals held that an exception for "willful acts" and "intentional misrepresentations" in a contractual provision limiting liability applied only to conduct that was "tortious in nature." In that case, however, the contractual provision provided that the defendant remained liable to the plaintiff for "intentional misrepresentations, or damages arising out of [defendant's] willful acts or gross negligence." *Id.* at 506 (quoting the provision) (emphases omitted) (alteration in original). The Court of Appeals specifically rejected the conclusion of the Appellate Division that "tort law principles apply in all cases in which the word willful is at issue or thereby limits the legal meaning of the word...." *Id.* Rather, the Court after a thorough analysis of the entire contract concluded that, in using the term "willful acts," the parties intended narrowly to exclude from the defendant's general immunity from liability for consequential damages conduct similar in nature to the terms "intentional misrepresentations" and "gross negligence" with which it was joined in that section of the contract.

The term "willful acts" in *Metropolitan Life* was intended by the parties to exclude from the limitation on liability truly culpable, harmful conduct, not merely non-performance of the contract motivated by financial self-interest. In this case, the clause at issue is very different. There is no exclusion for "willful acts." The phrase to be interpreted in this case is the exclusion for "any claim for intentional tort or willful misrepresentation." It is surely unclear at this point whether the parties intended "willful misrepresentation" to be limited to torts rather than breaches of representations and warranties in the Agreement; and, if so, what the phrase added to the exclusion for "intentional tort." The interpretation of the exclusion is not so unambiguous that it can be decided as a matter of law at this time. Thus, Count II of the complaint cannot be dismissed.

### C.

Finally, Lucent seeks dismissal of Count III of the complaint (breach of covenant causing certain representations and warranties to be untrue and incorrect). Lucent argues that the covenant in question (contained in Section 5.6 of the Agreement [3]) could only be breached by actions or omissions (1) that occurred between signing and closing (between January 19, 2000 and March 31, 2000) and (2) that caused a warranty or representation to be rendered false. Lucent contends that VTech has not alleged any facts that would constitute a breach of this covenant. VTech argues that, under Section 3.21 of the Agreement [4], the covenant applies to actions and omissions since the Balance

3. Section 5.6 of the Agreement states, in pertinent part:

> Seller agrees not to take any action, or omit to take an action, and shall cause its Affiliates not to take any action or omit to take any action, which would cause the representations and warranties contained in Article III hereof to be untrue or incorrect.

(Compl. Ex. 1, at 40.)

4. Section 3.21 of the Agreement states:

> Except as set forth on *Schedule 3.21* since the Balance Sheet Date, neither the Sellers nor any of their controlled Affiliates has taken any action which, if taken subsequent to the execution of this Agreement and on or prior to the Closing Date, would constitute a breach of the Business' agreements

Sheet Date (September 30, 1999), and that the complaint alleges sufficient facts to constitute a claim for breach of the covenant.

■ Lucent argues that all of the warranties are alleged to have been untrue when made at signing, so no action or omission on its part between signing and closing could have *caused* the warranties to be untrue at closing. VTech does allege that the representations were false when made in January 2000 and false when reaffirmed in March 2000. However, a party can always plead in the alternative. *See, e.g., Clarendon, Ltd. v. State Bank of Saurashtra,* 77 F.3d 631, 635 (2d Cir.1996) ("[The plaintiff] was entitled to plead alternative theories and to have both theories adjudicated."). There are various ways in which a claim can be stated. The evidence may show that the representations were in fact true in January 2000, but that actions were taken to make them untrue by March 2000. Alternatively, the representations may have been untrue in January 2000, become true thereafter, and actions may have been taken to make them untrue again by March 2000. Furthermore, if VTech is correct that the covenant applies back to September 1999, then the allegations could also state a claim. It cannot be said as a matter of law that the plaintiff can prove no set of facts that would establish such a claim.

### CONCLUSION

For the foregoing reasons, the motion to dismiss for failure to state a claim upon which relief can be granted is denied.

**SO ORDERED.**

set forth in clauses (a) through and including (m) of Section 5.6.