Douglas M. CRAM, Plaintiff–Appellant,

v.

PEPSICO, INC., Defendant–Appellee.

Docket No. 01–7092.

United States Court of Appeals, Second Circuit.

March 19, 2002.

Neal Brickman, Law Offices of Neal Brickman, New York, NY, for plaintiff-appellant.

Kenneth W. Gage, Day, Berry & Howard LLP, Stamford, CT, for defendant-appellee.

Present CALABRESI, CABRANES, Circuit Judges, and PRESKA,* District Judge.

*SUMMARY ORDER*

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Plaintiff Appellant Douglas M. Cram appeals from a Memorandum Opinion and Order dated December 21, 2000 and entered on December 22, 2000 in the United States District Court for the Southern District of New York (Sprizzo, *J.*), granting summary judgment in favor of Defendant Appellee PepsiCo, Inc. Cram was employed as an attorney in PepsiCo's legal department from September 1973 until early 1998. In February 1998, the parties began negotiating a severance agreement. The first draft of the agreement, dated February 10, 1998 (the "February 10 Draft"), provided Cram with, *inter alia*, a short-term continuation of his salary as well as other benefits. Because Cram's separation from PepsiCo was characterized as a "Retirement," Cram remained entitled to several long-term incentive awards in the form of stock options. A table in the February 10 Draft listed the following stock options as *outstanding* and vested as of that date under PepsiCo's 1987 Long–Term Incentive Plan (the "1987 Plan") [1]:

| Grant Date | Type of Grant | Number of Options | Exercise Price | Vesting Date | Expiration Date |
|---|---|---|---|---|---|
| 1/25/90 | '90 Reg. | 69,125 | $ 8.9717 | 2/1/94 | 1/25/00 |
| 1/23/92 | '92 Reg. | 53,591 | $15.3013 | 2/1/96 | 1/23/02 |
| 1/27/94 | '94 Reg. | 48,434 | $18.5822 | 2/1/98 | 1/27/04 |

The February 10 Draft stated, *inter alia,* that the vested options were granted pursuant to stock option agreements and would "continue to be exercisable and ex- pire on the respective dates set forth above, all subject to and in accordance with their terms." In addition, the agreement stated that, other than the stock

---

* The Honorable Loretta A. Preska, United States District Judge for the Southern District of New York, sitting by designation.

1. The February 10 Draft also listed in a separate table unvested stock options, which are not relevant for the purposes of this appeal.

options enumerated in the agreement, Cram had "no other awards outstanding" and that he would "not receive any further awards."

At issue in this litigation are the stock options granted to Cram on January 25, 1990 (the "1990 Stock Options"). It is undisputed that, on that date, Cram was granted the option to purchase 10,704 shares of PepsiCo stock at a price of $57.9375 per share. This award was evidenced by a stock option agreement also dated January 25, 1990. As a result of stock splits and certain corporate transactions, the aggregate number of options available to Cram from the 1990 grant was 69,125 shares at an exercise price of $8.9717 per share, as listed in the table above. The parties agree that all 69,125 of the 1990 Stock Options were outstanding on February 10, 1998.

After Cram rejected the February 10 Draft, a second draft dated February 26, 1998 (the "February 26 Draft") was presented to him. The February 26 Draft reflected a number of changes that Cram had requested, namely, an extension of the time frame during which Cram would remain a salaried employee, a delay in the date of Cram's retirement, and an award of vacation pay. All other terms of the severance agreement, including the table listing Cram's outstanding stock options, remained unchanged. Cram rejected the February 26 Draft also. Following further negotiations, the parties entered into a final severance agreement on March 24, 1998 (the "Final Agreement"). The Final Agreement included, in addition to the changes made in the February 26 Draft, a provision for a lump-sum separation payment in the amount of $110,000. The Final Agreement also reflected the fact that Cram's 1997 bonus in the amount of $167,490, which was contemplated in both the February 10 and 26 Drafts, had been paid to Cram. The table reflecting Cram's "outstanding and vested" stock options remained unchanged from the February 10 Draft.

It is undisputed by Cram that, during the course of negotiations with PepsiCo, he exercised all 69,125 of the 1990 Stock Options in four separate transactions.

1. On February 12, 1998, Cram exercised 25,000 of the 1990 Stock Options and received $408,480 in net proceeds. The fair market value of PepsiCo stock on that date was $35.8125.

2. On February 23, 1998, Cram exercised 20,000 of the 1990 Stock Options and received $346,143.08 in net proceeds. The fair market value of PepsiCo stock on that date was $35.250.

3. On February 25, 1998, Cram exercised 15,000 of the 1990 Stock Options and received $248,350 in net proceeds. The fair market value of PepsiCo stock on that date was $36.4375.

4. On March 9, 1998, Cram exercised 9,125 of the 1990 Stock Options, which were the last of the 1990 Stock Options, and received $174,507 in net proceeds. The fair market value of PepsiCo stock on that date was $39.3125.

On July 8, 1998, Cram contacted PepsiCo's compensation department and sought to exercise the 1990 Stock Options listed in the severance agreement. PepsiCo refused Cram's request after reviewing company records, which revealed that Cram had exercised the options between February 12, 1998 and March 9, 1998, in the transactions listed above. Cram subsequently brought this action for breach of contract, stating that the stock options at issue were not the preexisting 1990 Stock Options, but instead had been *granted* by the unambiguous and unequiv-

ocal language of the severance agreement indicating that the stock options were "outstanding." Cram argues that the stock options—whether they are characterized as new, additional, or a re-grant of the original 1990 Stock Options—constituted additional compensation that Cram had requested to forego his age discrimination claim against PepsiCo.[2]

In support of his breach of contract claim, Cram asserts that he had stated to PepsiCo officials with whom he negotiated the severance agreement that he valued his age discrimination claim at $6 million, but was willing to settle for $3 million and did not care what form the payment of this compensation took. Cram contends further that he "openly and notoriously exercised" the 1990 Stock Options between February 12, 1998 and March 9, 1998, and that it was his "firm belief that PepsiCo officials negotiating [his] severance package were completely aware of [his] exercis[ing]" these options. Cram Decl. ¶ 20. Cram argues that, based on the foregoing, he construed the table in the severance agreement referring to the 1990 Stock Options as outstanding as of March 24, 1998 "as a vehicle intended to provide him with the extra compensation [that] he had demanded." Appellant Br. at 9. This, he claims, was reasonable since the stock options were worth approximately $2.3 million (at the time that he sought to exercise them again) and, although the value "was less than the $3 million Cram had indicated [that] he would accept," he "assented and signed the [severance agreement]." *Id.* There is testimony in the record from the PepsiCo negotiator, however, that Cram sought, and in the Final Agreement received, $110,000 in cash in exchange for giving up his age discrimination suit.

Both parties moved for summary judgment below. The district court granted PepsiCo's motion and denied that of Cram, after finding that the Final Agreement is unambiguous on its face and that there had been no breach of contract by PepsiCo. *Cram v. Pepsico, Inc.,* 125 F.Supp.2d 102, 105 (S.D.N.Y.2000). The court rejected Cram's contention that the language in the severance agreement stating that the 1990 Stock Options were outstanding "represents a totally new grant to him on March 24, 1998." *Id.* The district court noted that the table in the severance agreement lists the grant as having been made on January 25, 1990, a full eight years prior to the execution of the Final Agreement, and provides that the options vested on February 1, 1994, four years before the severance agreement was finalized. *Id.*

On appeal, Cram challenges the district court's grant of summary judgment in favor of PepsiCo. We review *de novo* the district court's grant of summary judgment to determine whether the district court properly concluded that there was no genuine dispute as to any material fact and that the moving party was entitled to summary judgment as a matter of law. Fed. R.Civ.P. 56(c); *Leopold v. Baccarat, Inc.,* 239 F.3d 243, 245 (2d Cir.2001). In assessing whether judgment as a matter of law is proper, we review all evidence and draw all inferences in the light most favorable to the non-moving party. *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir.2001). We will affirm a grant of summary judgment as a matter of law only if no reasonable factfinder could return a verdict against the movant. *Id.*

---

**2.** Cram alleges that, during a conversation with Lawrence Dickie, a Senior Vice President, General Counsel and Secretary of PepsiCo, regarding Cram's separation from PepsiCo, Dickie stated that "there was 'no room' for Cram 'in the new Corp. law dept.,' but that a 'younger … I mean less experienced lawyer' would be hired." Appellant Br. at 5–6.

In this diversity action, we apply the laws of New York. The Final Agreement contained a choice of law provision,[3] and "[a]s a general rule, choice of law provisions ... are valid and enforceable in [New York]." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir.2000) (internal quotation marks and citation omitted) (alteration in original).[4] We agree with the district court that the language regarding the 1990 Stock Options in the Final Agreement is unambiguous because it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion." *Krumme v. West-Point Stevens Inc.*, 238 F.3d 133, 139 (2d Cir.2000) (internal quotation marks and citation omitted) (alteration in original). We also find that no reasonable factfinder could determine that the options in dispute to be anything other than the 1990 Stock Options. The parties agree that those particular options were exercised by Cram in 1998, and no reasonable factfinder could find that the options referred to in the Final Agreement constituted a grant of new options in 1998. Thus, we conclude, as a matter of law, that PepsiCo did not breach Cram's severance contract. Accordingly, after considering all of Plaintiff–Appellant's claims, we AFFIRM the district court's grant of PepsiCo's summary judgment motion and its denial of Cram's summary judgment motion.

---

**3.** The Final Agreement provides that it "shall be deemed a contract made under, and for all purposes to be governed by and construed in accordance with, the laws of the State of New York, without reference to principles of conflicts of laws."

**4.** Moreover, the parties' briefs assume that New York law controls, and such "implied consent ... is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir.2000) (internal quotation marks omitted).