**RUSSELL–STANLEY HOLDINGS, INC., Plaintiff,**

v.

**Vincent J. BUONANNO, Defendant.**

**No. 01 CIV. 8218(WK).**

United States District Court,
S.D. New York.

April 22, 2002.

---

Joseph L. Clasen, Esq., Robinson & Cole LLP, New York City, for Plaintiff.

Deming E. Sherman, Esq., Edwards & Angell, LLP, Providence, RI, Ira G. Greenberg, Esq., Edwards & Angell, LLP, New York City, for Defendant.

## MEMORANDUM & ORDER

WHITMAN KNAPP, Senior District Judge.

Plaintiff brings this action alleging securities fraud, breach of contract, warranty and fiduciary duty, pursuant to 15 U.S.C. § 78j; Rule 10b–5, 17 C.F.R. § 240; and 28 U.S.C. § 1367(a). Currently before us is defendant's motion pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss counts III, V and VII of the complaint and to strike plaintiff's demand for a jury trial for all the remaining counts. In addition, plaintiff has made a motion to disqualify the law firm of Edwards & Angell, LLP as defense counsel in this case. This motion will not be addressed in this memorandum.

## BACKGROUND

The following background information is taken from the complaint and assumed true for the purpose of the motion to dismiss:

Prior to 1969, defendant Vincent J. Buonanno ("defendant") was employed by New England Container Co., Inc.(the "Company"), a Rhode Island corporation, in the business of reconditioning "RCRA empty" steel drums obtained from various industries and selling them to its customers. From 1973 until 1978 defendant was the Company's Vice President and Chief Executive Officer, from 1973 until 1998 he was its Chief Financial Officer and Treasurer and from 1978 until 1998 he was its President and Chief Executive Officer.

From approximately 1952 through 1969, the Company conducted its business at 2074 Smith Street, North Providence, Rhode Island, a site called Centredale Manor (the "Property"). The Property consists of approximately nine acres situat-ed on the flood plains of the Woonasquatucket River and extends to the Allendale Dam.

From the late 1930's until the early 1970's Metro–Atlantic, Inc. ("Metro–Atlantic"), a chemical concern that manufactured, among other things, textile chemicals, was situated on the Property. Members of defendant's family held managerial positions in both the Company and Metro–Atlantic.

On July 21, 1998, plaintiff Russell–Stanley Holdings, Inc., ("plaintiff"), a Delaware corporation, entered into an agreement with defendant, who at the time was the Company's Chief Executive Officer and sole shareholder, to purchase the Company's 8,857 outstanding common stock (the "Purchase Agreement"). In exchange, defendant received 24,243 shares of plaintiff's common stock and $14,000,000, subject to certain adjustments set forth in the Purchase Agreement. The Purchase Agreement made certain representations and warranties concerning the Company's current and potential environmental liabilities. In addition, defendant agreed to indemnify plaintiff up to $2,000,000 for any losses arising out of any inaccuracies in the Purchase agreement or under any Environmental Law for any prior existing conditions.

On February 10, 1999 plaintiff and defendant entered into a second agreement whereby, in exchange for four payments of $250,000, defendant agreed to advise plaintiff and its subsidiaries on matters relating to the steel drum reconditioning business (the "Services Agreement").

On or about February 22, 1999, the United States Environmental Protection Agency (the "EPA") notified plaintiff that the Property was contaminated. Upon receipt of this information, the Company asked defendant, who then was one of plaintiff's directors, about the contamina-

tion and was assured that there existed no material environmental problem for which plaintiff would be responsible.[1] On or about September 15, 1999, plaintiff was advised by the EPA that the Company had been designated as a potentially responsible party under the Comprehensive Environmental Response Compensation and Liability Act (the "CERCLA") for environmental contamination on the Property. CERCLA authorizes the Federal Government, through the EPA, to compel a potentially responsible party to clean up hazardous substances or to reimburse the government for such cleanup costs. Until March 2001, defendant continued to assure plaintiff that it would not be responsible for any environmental problems on the Property. At that point he admitted, for the first time, that plaintiff might be liable for its environmental conditions.

The complaint asserts seven causes of action: (1) violation of Section 10(b) of the Exchange Act ("Section 10(b)") and Rule 10b–5; (2) common law fraud; (3) breach of warranty in connection with the Purchase Agreement; (4) breach of contract with respect to the indemnification provision of the Purchase Agreement; (5) recision of the Purchase and Services Agreements; (6) declaratory judgment; and (7) breach of fiduciary duty.

## DISCUSSION

Defendant seeks to dismiss plaintiff's claims for breach of warranty, rescission, and breach of fiduciary duty, counts III, V and VII respectively, and to strike the jury demand as to the remaining counts.

### A.  Breach of Warranty

■  Defendant argues that plaintiff's breach of warranty claim must be dis-

missed because it did not bring it within the two-year period allowed for in the Purchase Agreement.

The portion of the Purchase Agreement to which defendant refers states in pertinent part:

8.1  *Indemnification.* (a)(1) *Indemnification by [Defendant].* Subject to the limits set forth in this Section 8.1, [defendant] agrees to indemnify, defend and hold the [plaintiff] ... (including, after the Closing Date, the Company) ... harmless from and in respect to any and all losses, damages, costs and reasonable expenses (including, without limitation, reasonable fees and expenses of counsel) ... that they may incur arising: (i) out of or due to any inaccuracy of any representation or the breach of any warranty, covenant, undertaking or other agreement of [defendant] contained in this Agreement or Disclosure Schedule; (ii) under any Environmental Laws regarding conditions or events existing or occurring on or prior to the Closing Date;

.    .    .    .    .

(c) *Survival of Representations and Warranties* .... (ii) the representations and warranties set forth in Sections 2.17 and 2.26 will survive the Closing Date and will remain in full force and effect until the second anniversary of the Closing Date; *provided, further,* that such representations and warranties shall survive (if at all) beyond such period with respect to inaccuracy therein or breach thereof, written notice shall have been duly given within such applicable period in accordance with Section 8.1(d) hereof.

---

1.  When defendant became a director of plaintiff corporation is unclear. Defendant's Memorandum of Law in Support of his Motion to Dismiss states that it was after the Company was bought by plaintiff. Plaintiff's complaint and papers in opposition do not dispute this assertion, but neither give a more precise date.

(d) *Notice and Opportunity to Defend.* If there occurs an event which a party asserts is an indemnifiable event pursuant to Section 8.1(a) . . ., the party seeking indemnification shall notify the other party obligated to provide them indemnification . . . promptly.

While plaintiff does not contest that more than two year limitation have passed since the parties entered into the Purchase Agreement, it argues that the limitation clause applies only to indemnification claims and not to those alleging breach of warranty.

■ Under New York law, the governing law specified in the Purchase Agreement, when interpreting a written contract, its terms should be given their ordinary meaning and reconciled with other parts of the contract to avoid inconsistencies. *See Terwilliger v. Terwilliger* (2nd Cir.2000) 206 F.3d 240, 245–46 (citing multiple New York cases). Furthermore, "where contracts are negotiated by counsel for sophisticated commercial parties, courts should interpret ambiguous language to realize the reasonable expectations of the ordinary businessperson." *Bank of New York v. Amoco Oil Co.* (2nd Cir.1994) 35 F.3d 643, 662 (also applying New York law).

It seems clear that the limitation is applicable to indemnification claims and not to claims for breach of warranty. To interpret the Purchase Agreement otherwise would ignore the use of the word "indemnification" in the heading and in the provision's text, as well as create inconsistencies with other parts of the contract.

We, therefore, deny defendant's motion to dismiss plaintiff's breach of warranty claim.

**2.** Defendant originally sought dismissal of the fifth cause of action as it pertains to the rescission of the both the Purchase and Services Agreement. However, in his Reply Memorandum in Support of his Motion to Dismiss he withdraws all arguments except the one pertaining to the Services Agreement, which is addressed in this Memorandum.

### B. Rescission

In its fifth cause of action plaintiff seeks rescission of both the Purchase and Services Agreements. Under New York law, to state a claim for rescission plaintiff must plead fraud or material misrepresentation with particularity. McKinney's CPLR § 3016.

■ Plaintiff claims that it was damaged by defendant having knowingly made false and misleading representations in the Purchase Agreement. Although plaintiff also seeks rescission of the Services Agreement the complaint does not specifically allege fraud or misrepresentation in connection with that contract.

Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss states that the complaint alleges that "[defendant] made misrepresentations subsequent to the Purchase Agreement, while he was a director at [plaintiff]," which it asserts is enough to sustain a claim for rescission of the Services Agreement. (Pl. Opp. Mem. at 9). However, the complaint falls short of alleging fraud or misrepresentation *in connection with* the Services Agreement, which, from our understanding, only relates to defendant's rendering of advice in regard to the steel drum industry.

For this reason, we let count V stand only as it pertains to the Purchase Agreement.[2]

### C. Breach of Fiduciary Duty

■ Plaintiff's seventh cause of action claims that defendant owed it a fiduciary duty which he breached through false and misleading statements. Defendant does not deny that as a director he owed plaintiff such a duty, but instead argues that

plaintiff's breach of fiduciary duty claim is only in connection with the Purchase Agreement, the creation of which predates his time as director. Defendant further argues that even if the complaint does allege that he made false and material misrepresentations when he was a director, it fails to claim injury, a required element for a breach of fiduciary duty claim.

However, plaintiff's complaint does in fact allege that defendant made false and misleading statements after the parties entered into the Purchase Agreement, during his tenure as a director. (Compl.¶¶ 30—39). Furthermore, plaintiff alleges that it suffered injury through the continued misrepresentations and false statements defendant made after the Purchase Agreement, while he was a director of plaintiff corporation.[3] (Id.)

For the above reasons, we deny defendant's motion to dismiss plaintiff's breach of fiduciary duty claim.

### D. Jury Demand

Defendant seeks to strike plaintiff's jury demand based on a jury waiver in the Purchase Agreement. Plaintiff argues that the if it were successful in rescinding the Purchase Agreement the jury waiver provision in it would also be void. Plaintiff does not, however, contend that the jury waiver provision, which is broad in scope, is otherwise invalid.

■ The Seventh Amendment right to a jury, although a fundamental right, can be waived if done so knowingly and intentionally. Whether the right has been waived is governed by federal law. *Mc Guire v. Russell Miller, Inc.* (2d Cir.1993) 1 F.3d 1306, 1313–14 (citing *Simler v. Conner* (1963) 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (per curiam)).

■ Our research shows that federal case law is sparse on this issue. Plaintiff sights New York cases for the proposition that when a party seeks rescission of an agreement containing a jury waiver provision, based on an allegation of fraud, that party's right to demand a jury trial is preserved. *See Gardner and North Roofing and Siding Corp. v. Champagne*, 55 Misc.2d 413, 285 N.Y.S.2d 693 (N.Y.Co.Ct. 1967); *Federal Houscraft, Inc. v. Faria*, 28 Misc.2d 155, 216 N.Y.S.2d 113 (N.Y.App. Term.2d Dep't 1961) . However, we are unconvinced that this rule applies here.

At least one court in this district has held that absent an allegation of fraud in the inducement of the jury trial waiver itself, a general allegation of fraud in the inducement of the contract will not invalidate a knowing and intentional waiver. *Ameritrust Co. Nat'l Ass'n v. Dew* (S.D.N.Y. April 14, 1992) 1992 WL 84479 at *6 (RWS) (citing *Telum, Inc. v. E.F. Hutton Credit Corp.* (10th Cir.1988) 859 F.2d 835, 837–38, *cert. denied* (1989) 490 U.S. 1021, 109 S.Ct. 1745, 104 L.Ed.2d 182 (analogizing to cases determining the enforceability of arbitration clauses.)) Here, plaintiff does not allege in its complaint or elsewhere that it was fraudulently induced to waive its right to a jury trial. On the contrary, plaintiff is a sophisticated business entity that, in its assent to the Purchase Agreement, was represented by sophisticated counsel.

---

**3.** Although under its seventh cause of action for breach of fiduciary duty plaintiff states that "[b]y virtue of false and misleading misrepresentations made by [defendant] in the Purchase Agreement, defendant breached his fiduciary duty to [plaintiff]," which appears to only state a claim for breach of a fiduciary duty in regard to the Purchase Agreement, other portions of the complaint, namely ¶¶ 30–39, which are incorporated by reference in this section, state a claim for breach of fiduciary duty at the time defendant was a director.

For this reason we enforce the jury waiver and strike plaintiff's jury demand.

## CONCLUSION

For the aforementioned reasons, we deny defendant's motion to dismiss counts III and VII. As to count V, we let it stand, but only as it pertains to the Purchase Agreement. Lastly, we grant defendant's motion to strike the Jury Demand.

**SO ORDERED.**