NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-1130

IDT CORPORATION,
Appellant

v.

TOURO COLLEGE;
TOURO UNIVERSITY;
TOURO UNIVERSITY INTERNATIONAL;
SUMMIT PARTNERS

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 07-cv-06080)
District Judge: Honorable Joseph A. Greenaway, Jr.

Submitted Under Third Circuit LAR 34.1(a)
March 25, 2010

Before:  RENDELL, FUENTES and CHAGARES, Circuit Judges.

(Filed April 14, 2010)

OPINION OF THE COURT

RENDELL, Circuit Judge.

Plaintiff IDT Corporation ("IDT") appeals from an order of the District Court

dismissing IDT's complaint for breach of contract under Federal Rule of Civil Procedure

12(b)(6). IDT contends that the District Court erred in finding that the agreement was unenforceable under New York's Not-For-Profit Corporation Law ("N-PCL") and the federal tax code. Because we conclude that the District Court was correct in dismissing the complaint, we will affirm the Order of the District Court.

## I.      Background

Plaintiff IDT is a Delaware telecommunications corporation with its principal place of business in Newark, New Jersey. Defendant Touro College ("Touro") is a New York not-for-profit corporation with its principal place of business in New York City. Touro operates undergraduate and graduate schools on several campuses in the United States and Israel, and has affiliated programs in Europe.

This dispute arises from an effort by Touro to create an internet-based university. In 1998, Dr. Bernard Lander, the founder of Touro, contacted Howard Jonas, the founder of IDT, to inquire about the possibility of IDT providing the necessary technical expertise. According to the complaint, Jonas offered, on behalf of IDT, to have IDT provide the hardware, software, and technical support needed for the creation of the online university, in exchange for a 20% "equity interest" in the venture. Jonas assured Lander that IDT would not utilize its equity interest to seek profit distributions from the online university, but instead would wait to exercise this interest until the online university conducted an initial public offering or was sold. Lander accepted this offer on behalf of Touro.

2

Touro established the online university in late 1998 as Touro University International ("TUI"), which was registered and accredited in the state of California. TUI operated as a division of Touro University, a California nonprofit whose only member is Touro. IDT provided internet hosting services, infrastructure, equipment, and technical personnel that enabled TUI to function as an internet university. Jonas also joined the boards of both Touro and Touro University.

In April 2004, Lander informed the Touro Board of Trustees that he intended to sell the assets of TUI to Sylvan Learning Center for approximately $100 million. Jonas responded that he believed that TUI had a much greater value, and allegedly reminded the Board of IDT's equity interest in TUI. Jonas then contacted a venture capital firm, which offered to purchase TUI for $140 million and to separately compensate IDT for its 20% equity interest. The Board rejected this offer, and also declined to sell TUI to Sylvan Learning Center. Jonas resigned from the boards of Touro and Touro University in June 2004.

In October 2007, Touro announced that it was selling the assets of TUI to Summit Partners for $190 million. After the sale was concluded, IDT filed suit in the United States District Court for the District of New Jersey against Touro, Touro University, TUI, and Summit Partners.[1] The lawsuit alleged that Touro had breached its contract with

---

[1] Prior to the District Court's ruling on the motion to dismiss, IDT voluntarily dismissed its claims against Summit Partners and TUI.

3

TUI, and sought either a payment from Touro for 20% of the amount Touro received from the sale of TUI or a declaratory judgment stating that IDT still retains a 20% interest in TUI despite its sale to Summit Partners.[2]

Touro moved to dismiss the complaint. The District Court granted the motion, holding that Touro's contract with IDT was unenforceable because it violated N-PCL § 501 (which prohibits not-for-profit corporations from issuing stock or shares), N-PCL § 204 (which prohibits not-for-profit corporations from conducting activities for financial gain), and Internal Revenue Code § 501(c)(3) (which prohibits tax-exempt nonprofits from allowing their earnings to "inure to the benefit of any private shareholder or individual").

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332, and we have jurisdiction over IDT's appeal pursuant to 28 U.S.C. § 1291.

When reviewing a district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6), we exercise plenary review and apply the same test as the district court. *Capogrosso v. Super. Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009). A motion to dismiss should only be granted if, accepting the well-pleaded facts alleged in the complaint as true, and viewing them in the light most favorable to the plaintiff, the

---

[2] IDT does not argue that it is entitled to compensation for the value of the goods and services it provided to Touro under any theory other than breach of contract.

plaintiff is not entitled to relief. *Id.*

The District Court applied New Jersey choice-of-law rules and concluded that New York law applies to this case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496-97 (1941) (requiring federal courts sitting in diversity to apply choice-of-law rules of forum state). Neither party contests this determination.

## III.    Discussion

Under New York law, to state a claim for breach of contract IDT must allege the existence of a valid contract, a breach by Touro, and damages suffered as a result of the breach. *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000). The District Court correctly determined that a contract that violates New York's Not-for-Profit Corporation Law is unenforceable and cannot support a claim for breach of contract. *See Spencer v. Patrone*, 747 N.Y.S.2d 569, 570 (N.Y. App. Div. 2002). The District Court considered the contract's validity under three statutes. However, because we conclude that the contract was invalid under N-PCL § 501, we need not review the Court's determinations with respect to the other statutes.

The District Court correctly held that enforcing the contract would violate N-PCL § 501. Under § 501, a not-for-profit corporation "shall not have stock or shares or certificates for stock or for shares." N.Y. Not-for-Profit Corp. Law § 501. IDT argues that its "equity interest" was not a stock or share prohibited under § 501, but instead was payment of "the agreed upon consideration for the valuable assistance provided by IDT."

Appellant's Br. at 13.

New York law does not define "stock or shares" as used in § 501. However, other New York statutes equate those terms with an equity interest in an entity. For instance, New York's Banking Law defines both "share" and "stock" to include "the equity interest represented by a member's right to a proportionate share of the profits of the company." N.Y. Banking Law § 2-a, 2-b. This definition is also within the natural meaning of the words. Black's Law Dictionary recognizes that "[a] share represents an equity or ownership interest in the corporation or joint-stock company." Black's Law Dictionary (9th ed. 2009). In addition, a "stock" is a "proportional part of a corporation's capital . . . granting the holder the right to participate in the company's general management and to share in its net profits or earnings." *Id*.

We agree with the District Court that IDT's "equity interest" in TUI is a forbidden "stock or share" in a not-for-profit corporation, and that the agreement was therefore invalid. *Spencer,* 747 N.Y.S.2d at 570. In *Spencer*, one member of a not-for-profit corporation bought another's "shares" in the corporation in an attempt to gain voting rights and control the board. *Id*. at 569. The court ruled that because a not-for-profit corporation is statutorily unable to issue shares under N-PCL § 501, there were no shares to acquire, and the agreement transferring the shares "has to be declared null and void." *Id*. at 570. Similarly, here there was no "equity interest" in TUI for IDT to acquire, and this agreement is also null and void. IDT therefore did not allege the existence of a valid

6

contract to support a claim for breach of contract, and its complaint was properly dismissed.

IDT's reliance on *Tully v. Sylvan Lawrence Co.*, No. 97 CIV 5762, 1999 WL 60148, at *2 (S.D.N.Y. Feb. 4, 1999), for the proposition that a not-for-profit company may enter into a joint venture with a for-profit company, is misplaced. There is no allegation that TUI was a joint venture between IDT and Touro. Instead, the complaint alleges that TUI was organized as a division of Touro University, a California non-profit, of which Touro was the sole member. As Touro notes, because TUI was not separate from Touro, an equity interest in TUI could only be construed as an equity interest in Touro.

## IV.    Conclusion

For the reasons set forth above, we will AFFIRM the Order of the District Court.