13-3052-cv
*Sarkissian Mason, Inc. v. Enterprise Holdings, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of July, two thousand fourteen.

PRESENT:

JOSÉ A. CABRANES,
SUSAN L. CARNEY,
CHRISTOPHER F. DRONEY,
            *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
SARKISSIAN MASON, INC., a Michigan Corporation,
AUTOMATIC, LLC, a Delaware Limited Liability Company,

        *Plaintiffs-Appellants,*


        -v.-                                                No. 13-3052-cv


ENTERPRISE HOLDINGS, INC., a Missouri Corporation,

        *Defendant-Appellee.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| **FOR PLAINTIFFS-APPELLANTS:** | KEVIN F. O'SHEA (Sharon S. Almonrode, *on the brief*), The Miller Law Firm, P.C., Rochester, MI. |
| **FOR DEFENDANT-APPELLEE:** | DANIEL D. EDELMAN (Douglas W. Sullivan, Joel D. Smith, San Francisco, CA, *on the brief*), Crowell & Moring LLP, New York, NY. |

1

Appeal from the July 18, 2013 judgment of the United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 18, 2013 judgment of the District Court be **AFFIRMED**.

Plaintiffs Sarkissian Mason, Inc. and its subsidiary AutoMatic, LLC (jointly, "Sarkissian") appeal the judgment of the District Court granting summary judgment for defendant Enterprise Holdings, Inc. ("Enterprise") on all five of Sarkissian's claims for: (1) breach of contract; (2) promissory estoppel; (3) unjust enrichment; (4) fraudulent misrepresentation; and (5) misappropriation of trade secrets. We assume familiarity with the factual and procedural history of the case and repeat only those details necessary to the resolution of this appeal.

## BACKGROUND

Enterprise is the largest rental car business in the United States. Sarkissian is a digital marketing agency. In October 2010, Sarkissian and Enterprise entered into a nondisclosure agreement ("NDA") in connection with a venture to develop a program unrelated to the claims in this case. The NDA definition of "Confidential Information" excluded information that was "part of the public domain," "was in the lawful possession of the Receiving Party prior to its disclosure" or "is developed independently by the Receiving Party." Joint App'x 862-63. In 2011, Enterprise showed Sarkissian a study showing that consumers renting cars in the "insurance replacement market" were more likely to buy the type of rental car they were driving, because they are frequently in the market for a new car.[1] Enterprise wanted Sarkissian to design a program that would enhance the value of Enterprise's insurance replacement rental fleet to the car manufacturers by enabling manufacturers to use the rental experience to promote their cars to rental customers.

Between March and June 2011, Sarkissian sent Enterprise five PowerPoint presentations setting forth a proposal for a "car buying service using mobile engagement technology to connect renters and vehicle manufacturers . . . for the purpose of generating new car sales" that would be called "AutoMatic Buying Service" ("ABS"). Appellants' Br. 7. Central to the proposal was a website, to be built and operated by Sarkissian at the cost of $1.25 million. The renter would initially connect with the website through the placement of a so-called "QR code" somewhere in the car which, when scanned by a mobile device, would connect that device to the website. These "QR codes" were popular in a variety of markets by 2011, including car manufacturers. Sarkissian and Enterprise would share revenue from the manufacturers for sales "leads" generated by the program.

Enterprise began discussing the concept of a QR code-based program that would connect car renters with manufacturers with Mazda, a car manufacturer who agreed to act as a test case.

_____

[1] Consumers in the "insurance rental market" are those whose insurance companies paid for a rental car as part of the insurance coverage for a "totaled" or damaged car.

Sarkissian was also discussing its concept with car manufacturers during this time, to gauge their interest in Sarkissian's platform, ABS.

In August 2011, Sarkissian sent Enterprise a draft "Strategic Relationship Agreement" (the "Agreement") pursuant to which Sarkissian, through ABS, would act as "middleman" between Enterprise and manufacturers. The Agreement contained an exclusivity provision that required manufacturers dealing with Enterprise to use the Sarkissian platform.[2] Enterprise objected to the exclusivity provision, and never signed the Agreement, but stated that it would be willing to test their proposed third-party website, *if* Sarkissian could get other manufacturers on board. Sarkissian was unable to do so. At the same time Enterprise was working with manufacturers to implement a similar QR-based program using the manufacturers' own websites. In November 2011, Enterprise announced a new program, OnRamp, as "the first . . . comprehensive QR code-based [car] renter engagement campaign." Joint App'x 1193. No car manufacturer ever agreed to use Sarkissian's design, and Sarkissian never became involved in OnRamp.

Sarkissian filed this action on December 22, 2011. In a July 15, 2013 Opinion, the District Court granted summary judgment for defendants on all counts. This timely appeal followed.

## DISCUSSION

We review *de novo* an order of a district court granting summary judgment. *Terwilliger v. Terwilliger,* 206 F.3d 240, 244 (2d Cir. 2000). To survive summary judgment, a plaintiff must produce specific facts showing that there is a genuine dispute as to a material fact, requiring a trial. *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). *See also* Fed R. Civ. P. 56(c).

After concluding that Missouri law governed all claims in this diversity action, the District Court addressed each of the five claims. It dismissed Count I for breach of the NDA on the basis that "[u]nder the plain meaning of the contract, Confidential Information excluded [the] information Enterprise disclosed"—information regarding the basic idea of connecting rental car users with car manufacturers through QR codes—was lawfully in possession of Enterprise and/or publicly available. The only confidential information—Sarkissian's actual platform—was not disclosed or used by Enterprise. Joint App'x 1481. We agree.

On Count V for misappropriation of trade secrets, the District Court applied the Missouri Uniform Trade Secrets Act ("MUTSA")[3] to plaintiffs' alleged "trade secrets" as set forth in the five

---

[2] Sarkissian contends that it was flexible on that point, but the Agreement is clear. Moreover, the only evidence of Sarkissian's flexibility was its own assertion that Sarkissian "was flexible regarding the mobile website landing page" and would "implement the mobile engagement concept in whatever fashion the [manufacturers] desired." Joint App'x 877. This flexibility still contemplates that Sarkissian would act as the intermediary.

[3] The only issue was whether ABS constituted a "trade secret" within the meaning of MUTSA. Courts use the following factors to determine whether information constitutes a trade secret under MUTSA: "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value

3

PowerPoint presentations, and concluded that ABS did not merit legal protection as a trade secret because "[a]ll of the component parts of the idea were publicly known and in use before Plaintiffs presented their proposal to Enterprise." Joint App'x 1475-76. Even if plaintiffs' marketing proposal combining these idea was novel, it is not a trade secret because it is (and was) easily replicated. *Id.* Plaintiffs never developed, and Enterprise never appropriated, technology or logistics for implementing the program, which might have been protected under MUTSA. *Id.* We agree that OnRamp was a different concept than ABS "created from a similar collection of public[ly] available ideas," *id.* at 1480, and was not a misappropriation of a trade secret.

The District Court held that the claims for estoppel, unjust enrichment and fraud (Counts II-IV) were preempted by MUTSA, which "displace[s] conflicting . . . laws of this state providing civil remedies for misappropriation of a trade secret." MUTSA § 417.463(1). Even if these claims are not preempted,[4] Sarkissian has produced no facts showing that Enterprise, having declined to enter into the Agreement, made any actionable promise to Sarkissian as required for an estoppel claim. *See 1861 Group, LLC v. Wild Oats Markets, Inc.*, 728 F. Supp. 2d 1052, 1061 (E.D. Mo. 2010). Nor have they produced evidence that Enterprise made actionable misrepresentations regarding its willingness to negotiate with Sarkissian. Finally, Sarkissian makes no argument on appeal supporting its contention that Enterprise was unjustly enriched at Sarkissian's expense, and our review of the record reveals no basis for this claim.

## CONCLUSION

We have considered all of plaintiffs' arguments and find them without merit.[5] Accordingly, for the reasons set out above, we **AFFIRM** the July 18, 2013 judgment of the District Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

---

of the information to [the business] and to [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Secure Energy, Inc. v. Coal Synthetics, LLC*, 708 F. Supp. 2d 923, 926 (E.D. Mo. 2010) (citation and quotation marks omitted).

[4] Because we agree that no trade secrets are implicated, it is not clear that these claims are preempted. *See Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 917 (W.D. Mo. 2010) ("[I]f the information does not qualify as a trade secret, then the Trade Secret Act has no application" and common law claims are not preempted).

[5] We agree with the District Court that plaintiffs' expert, Nils-Erik von Zelowitz, whose testimony consisted largely of the legal opinion that plaintiffs' presentation, as a whole, constituted a trade secret, did not create a genuine issue of material fact that would render summary judgment inappropriate. *See Am. Family Mut. Ins. Co.*, 169 S.W.3d 905, 910 (Mo. App. W.D. 2005) (existence of a trade secret under MUTSA is a conclusion of law).